(February 22, 2000)

■ In the Matter of 601 Realty Corp., Appellant, v City of New York Department of Health et al., Respondents. [703 NYS2d 458] —Order, Supreme Court, New York County (William Wetzel, J.), entered August 13, 1998, which denied the petition and dismissed this CPLR article 78 proceeding seeking to an-

nul respondent's Order to Abate Nuisance, dated October 22, 1997, and to remove such order from respondent's records, unanimously affirmed, without costs.

Respondent's order was based upon its inspection of apartment 58 in petitioner's premises at 601 West 173rd Street on October 8, 1997, which determined that a child under 18 years of age with a reported blood-lead level of 20 micrograms per deciliter or higher resided there and that said dwelling unit contained "lead based paint with a concentration of lead equal to or greater than 1.0 milligrams of lead per square centimeter [mg/cm], and which is peeling, and/or located on one or more window friction surfaces, or on another surface that the Department has determined to be a lead hazard, because of its condition, location or accessibility to children, in violation of New York City Health Code Section 173.13 (d) (2)".

Petitioner was advised that it could contest the order by notifying the Lead Poisoning Prevention Program by telephone or facsimile transmission within three days of its intention to do so and by submitting, within five business days thereafter, a complete written report of the disputed findings obtained by X-ray fluorescent (XRF) analyzer or chemical analysis of paint chip samples together with an affidavit confirming that the areas sampled were the same surfaces as those reported in respondent's order and that the method used followed the applicable United States Department of Housing and Urban Development (HUD) guidelines. Within five business days of respondent's receipt of contested results, it would notify petitioner whether it would: re-test the dwelling unit; accept all or some of the contested findings and withdraw or amend the Order to Abate; or reject the contested findings, in which event petitioner would have to abate the lead paint violations in the original order within five business days of receipt of the notice of rejection of the contestation.

Petitioner availed itself of that procedure and duly contested respondent's order by timely submitting a report of the results of the laboratory analysis of paint chips collected by its environmental testing company on October 28, 1997. The report, which complied with respondent's testing requirements, indicated that the paint chips in the areas tested contained lead levels ranging from .005 to .072 mg/cm. By form letter dated November 3, 1997, petitioner was notified that its application to contest the Commissioner's Order to Abate was denied for the reason that the "[s]ampling results submitted are insufficient to require the Department to rescind its sampling results showing the presence of lead paint in sur-

faces tested and violations remain as originally cited." Thereupon, petitioner retained a second environmental testing company which retested the same surfaces in the apartment on November 13, 1997, using the same model XRF analyzer used by respondent. According to its report, dated November 17, 1997, the lead levels ranged from .1 to .6 mg/cm. However, in a telephone conversation with respondent Mohamed on November 20, 1997, petitioner was informed that the report of the XRF would not be considered by respondent because the contestation period had expired. Petitioner then abated the lead paint violations and commenced this proceeding to annul such determination and remove the violations from respondent's records.

There is no support in the record for petitioner-appellant's claims that the IAS Court applied an incorrect standard of review and that respondent's actions and findings were arbitrary and capricious or unsupported by substantial evidence. The IAS Court specifically stated that the sole issue before it was whether, on this record, respondent's decision was arbitrary and capricious. Moreover, it correctly held that in the review of an administrative determination, such determination must be upheld if it is not arbitrary and capricious under the circumstances and that the judicial function is exhausted where a rational basis is found for the administrative determination. (*See, Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Howard v Wyman*, 28 NY2d 434, 438.)

Applying the applicable provisions of the Health Code, the IAS Court found that the apartment in question contained lead-based paint in amounts at or greater than 1.0 mg/cm when measured by respondent's XRF analyzer. In response to petitioner's claim that such finding was inconclusive and contradicted by the findings of its experts, the court found that the "Classification of Results Using Threshold Values" in the XRF Performance Characteristic Sheet, relied upon by petitioner, states that "[f]or the inconclusive range, results are classified as positive if they are greater than or *equal* to the upper limit of the inconclusive range" (emphasis in original), i.e., 1.0 mg/cm. It further found that just because the paint chip analysis, or even the XRF analysis, conducted by petitioner's experts reached a different conclusion, this did not establish that respondent's reliance upon the findings of its own inspectors was arbitrary or capricious or lacked a rational basis.

We agree. "The courts may not weigh the evidence or reject the choice made by [such agency] where the evidence is conflict-

ing and room for choice exists" (*Toys "R" Us v Silva*, 89 NY2d 411, 424, quoting *Matter of Stork Rest. v Boland*, 282 NY 256, 257).

Nor is there any merit to petitioner's argument that respondent's contestation procedure, on its face or as applied, denied petitioner and all landlords of their constitutional right to due process or reasonable notice and a meaningful opportunity to be heard.

As the administrative agency charged with enforcing the relevant ordinances and regulations requiring abatement of health hazards associated with the exposure of children to lead-based paint, respondent was entitled to rely upon the results of its own tests, the accuracy and methodology of which is not refuted on the record. It is undisputed that a child with a dangerous blood-lead level resided in the apartment and there is no evidence that respondent improperly applied an inappropriate standard in finding that the 1.0 mg/cm reading obtained by its inspector constituted a positive result mandating corrective action by petitioner. Even if the reading were borderline, as contended by petitioner, respondent, as the responsible agency, would not necessarily be acting arbitrarily and capriciously if it erred on the side of caution.

Finally, on the facts of this case, there is no merit to petitioner's argument that it was not afforded "a reasonable and fair opportunity to be heard before the Department of Health and to present facts and proofs, according to its rules and directions", as mandated by section 17-146 of the Administrative Code of the City of New York, or that respondent has created a procedure whereby it would prevail every time. Concur—Sullivan, P. J., Nardelli, Williams, Rubin and Andrias, JJ.